# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

| | |
|---|---|
| **SHIRLEY ANN FOREMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 3:09-00843** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered May 4, 2010 (Document No. 12.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 11.)

The Plaintiff, Shirley Ann Foreman, (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on October 14, 2004, alleging disability as of March 1, 2003, due to learning disabilities, problems with his feet and legs, a torn cartilage in his knee, carpal tunnel syndrome, and thyroid problems. (Tr. at 248, 294-96, 313.) The claims were denied initially and upon reconsideration. (Tr. at 280-82, 287-89.) On February 14, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 279.) The hearing was held on April 6, 2007, before the Honorable James D. Kemper. (Tr. at 587-618.) By decision dated June 26, 2007, the ALJ

determined that Claimant was not entitled to benefits. (Tr. at 248-62.) The ALJ's decision became the final decision of the Commissioner on May 21, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 217-20.) Claimant filed the present action seeking judicial review of the administrative decision on July 22, 2009, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas

>(activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, March 1, 2003. (Tr. at 250, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of degenerative joint disease of the left knee, arthraligas, borderline intellectual functioning, anxiety disorder, and dysthymia. (Tr. at 251, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 253, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform a reduced range of medium work as follows:

> [C]laimant has had, at all relevant times, the following residual functional capacity: limited to a reduced range of medium work activity involving lifting and/or carrying of no more than fifty pounds maximum occasionally and twenty-five pounds maximum frequently; no more than occasional climbing, balancing, kneeling, and crawling, avoidance of concentrated exposure to extreme cold, vibration, and hazards; and while "moderately" limited in the ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; travel to unfamiliar places or use public transportation; or to set realistic goals or make plans independently of others; she retains the basic mental capacity to perform routine work activities with initial supervision.

(Tr. at 256, Finding No. 5.) At step four, the ALJ found that Claimant could return to her past relevant work as a housekeeper. (Tr. at 260, Finding No. 6.) In the alternative, and on the basis of

testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant also could perform jobs such as a product packager at the medium level of exertion, laundry worker at the light level of exertion, and product grader/sorter/selector at the sedentary level of exertion. (Tr. at 260-61, Finding No. 10.) On this basis, benefits were denied. (Tr. at 261, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 10, 1962, and was 47 years old at the time of the administrative hearing, April 6, 2007. (Tr. at 260, 294.) Claimant had a high school education and was able to communicate in English. (Tr. at 260, 318-19.) In the past, she worked as a housekeeper. (Tr. at 260,

314.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant first alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in not finding that she met Listing 12.05 for mental retardation. (Document No. 10 at 6-8.) Specifically, she asserts that the ALJ erred in not accepting Dr. Frederick's diagnosis of mild mental retardation. (Id. at 7.) The Commissioner asserts in response that the ALJ's decision to not accept Dr. Frederick's diagnosis is supported by substantial evidence. (Document No. 11 at 7-9.) The Commissioner asserts that Claimant essentially is asking the Court to re-weigh the evidence and draw different factual conclusions. (Id. at 8.) The Commissioner notes that Listing 12.05 requires more than valid IQ scores to establish mental retardation. (Id.) Accordingly, the Commissioner asserts that Claimant's argument is without merit.

Claimant next alleges that the ALJ failed to perform a proper analysis under AR 00-1(4). (Document No. 10 at 8-9.) Claimant asserts that in a prior decision by another ALJ, it was determined that her past relevant work as a housekeeper was performed at the medium exertional level. (Id. at 8.) ALJ Kemper however, determined upon the testimony of the VE, that her past relevant work varied at the semi-skilled level from light to medium. (Id.) She asserts that the ALJ made to attempt to reconcile the contradictory statements. (Id.) In response, the Commissioner asserts that AR 00-1(4) does not apply to conflicting VE testimony but to a finding of a claimant's RFC. (Document No. 11 at 9.) The Commissioner asserts that pursuant to the Ruling, facts and issues are considered de novo regarding an unadjudicated period. (Id.) Moreover, the Commissioner asserts that because Claimant appealed the prior ALJ decision to federal court, the prior ALJ's

7

findings are not final for purposes of the Ruling. (Id.)

Analysis.

1. Listing 12.05.

"The Listing of Impairments . . . describes, for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2007); see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990). "For a claimant to qualify for benefits by showing that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." See id. at 531 (emphasis in original).

Section 12.05 of the Listing of Impairments provides criteria for determining whether an individual is disabled by mental retardation or autism. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2007). The required level of severity for Listing 12.05 is satisfied when any one of the four following requirements is satisfied:

> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

> B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-

    related limitation or function;

    OR
        D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting
    in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration.

The Fourth Circuit has held that a claimant's additional "severe" impairment qualifies as a significant work-related limitation for the purpose of listing § 12.05C. Luckey v. U.S. Dept. of Health & Human Serv., 890 F.2d 666 (4th Cir. 1989) (per curiam). A "severe" impairment is one "which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c) (2007). In Luckey, the Court ruled that:

> Luckey's inability to perform his prior relevant work alone established the significant work-related limitation of function requirement of § 12.05C. Further, the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities. The Secretary's finding that Luckey suffers from a severe combination of impairments also establishes the second prong of § 12.05C.

Id. at 669 (internal citations omitted).

As described in the introduction to the Listing, one of the essential features of mental retardation is significant deficits in adaptive functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; See also, The Merck Manual of Diagnosis and Therapy 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999) (defining mental retardation as "significantly subaverage intellectual quotient with related limitations in two or more of the following: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional

9

academics, leisure, and work.").[2] Also, according to the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, 4th Edition, ("DSM-IV")(1994), one of the essential features of mental retardation is significant deficits in adaptive functioning. <u>Id</u>. at 39-40. Adaptive functioning refers to how effectively an individual copes with common life demands and how well he meets the standards of personal independence expected of someone in his particular age group, sociocultural background, and community setting. <u>Id.</u> at 40. Thus, the Regulations make clear that Listing 12.05C is a three-part test. The Introduction to section 12.00 of the Listings, section 12.00A, was revised in 2000 to state as follows:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A; 65 Fed. Reg. 50, 746, 50, 776; <u>see also</u> <u>Foster v. Halter</u>, 279 F.3d 348, 354 (6th Cir. 2001) (detailing change).

The record in this case disclosed that Claimant was evaluated by Lisa C. Tate, M.A., on September 14, 2003. (Tr. at 170-75.) Intellectual testing revealed a verbal IQ of 76, a performance IQ of 78, and a full scale IQ of 75. (Tr. at 173.) On WRAT-III testing, it was determined that Claimant read at a second grade level, spelled at a first grade level, and performed arithmetic at a fourth grade level. (Tr. at 174.) Diagnoses included depressive disorder NOS and borderline

---

[2] "In 1992 the American Medical Association on Mental Retardation changed the definition of mental retardation to reflect adaptation to the environment and interaction with others by a person with limited intellectual functioning. Classification based on IQ alone (mild, 52 to 68; moderate, 36 to 51, severe, 20 to 35; profound, less than 20) has been replaced to that based on level of support needed." <u>The Merck Manual of Diagnosis and Therapy</u> 2259 (Mark H. Beers, M.D. & Robert Berkow, M.D., eds., 17th ed. 1999).

intellectual functioning. (Id.)

Claimant was evaluated by Dr. David K. Frederick, Ph.D. on February 11, 2005. (Tr. at 428-331.) WAIS-III testing revealed a verbal IQ of 70, performance IQ of 68, and a full scale IQ of 66. (Tr. at 430.) On the WRAT-III test, Dr. Frederick determined that Claimant performed reading, spelling, and arithmetic at the third grade level. (Id.) Dr. Frederick determined that these scores were valid. (Id.) He diagnosed anxiety disorder NOS, dysthymic disorder NOS, and mild mental retardation. (Tr. at 431.)

On September 1, 2005, Dr. Frank D. Roman, Ed.D., completed a form Psychiatric Review Technique on which he diagnosed mild mental retardation, based on Dr. Frederick's evaluation. (Tr. at 483-95.) He opined that Claimant's mild mental retardation resulted in mild limitations of activities of daily living; moderate limitations in maintaining social functioning, concentration, persistence, and pace; and no episodes of decompensation. (Tr. at 493.)

The ALJ determined that despite a history of special education placement and limited ability to read and write, "borderline intellect is more consistent with [the] weight of the evidence as a whole." (Tr. at 251.) The ALJ noted that Claimant graduated high school and took literacy classes at the public library. (Id.) Claimant reported that she handled daily maintenance issues effectively and independently, including caring for her children and handling financial matters. (Id.) Claimant likewise reported that she was capable of driving, cooking, cleaning, shopping, keeping appointments, and following instructions. (Id.) The ALJ further noted that Claimant performed past relevant work at unskilled occupations, and assisted Habitat for Humanity in building her house. (Id.) The ALJ then determined that Claimant's mental impairments resulted in no more than mild limitations in activities of daily living, no limitations in maintaining social functioning, and

11

moderate limitations in maintaining concentration, persistence, or pace. (Tr. at 254-55.) He further found that Claimant had not experienced any episodes of decompensation. (Tr. at 255.)

As the Commissioner notes, Claimant essentially asks this Court to re-weigh the evidence, which this Court cannot do. The undersigned finds that the ALJ's determination is supported by substantial evidence. Though Claimant tends to assert that her IQ scores alone should equal the listing, it is clear, as discussed above, that she also must provide deficits in adaptive functioning. Claimant has failed to do this, and the undersigned finds that the substantial evidence does not support a Listing level impairment under 12.05. Accordingly, the undersigned finds that Claimant's argument is without merit.

2. <u>AR 00-1(4)</u>.

Claimant next alleges that the ALJ erred in failing to follow AR 00-1(4). Acquiescence Ruling 00-1(4) provides as follows:

> When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

The Commissioner asserts that the Ruling is inapplicable to conflicting VE testimony. (Document No. 11 at 9.) The Commissioner correctly notes that the Ruling

> applies only to a finding of a claimant's residual functional capacity or other finding required at a step in the sequential evaluation process for determining disability

12

provided under 20 CFR 404.1520, 416.920 or 416.924, as appropriate, which was made in a final decision by an ALJ or the Appeals Council on a prior disability claim.

In his decision, the ALJ found at step four that Claimant was able to return to her past relevant work as a housekeepers, which the VE testified was classified as light to medium semi-skilled work. The prior ALJ had determined, based on VE testimony, that the housekeeper job was performed by Claimant up to the medium exertional level, and that she could not return to her past relevant work. (Tr. at 20, Finding No. 7; 213.) The undersigned finds that any error the ALJ may have committed is harmless because the ALJ made an alternative finding at step five of the sequential analysis that Claimant could perform other jobs in the national economy. Accordingly, the undersigned finds that Claimant's argument is without merit.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date

of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

DATE: September 7, 2010.

R. Clarke VanDervort
United States Magistrate Judge